THE STATE OF FLORIDA, AND THE COUNTY OF ST. JOHNS, IN THE STATE OF FLORIDA, *Appellants,* v. WILLIAM H. BEARDSLEY, WILLIAM R. KENAN, JR., AND W. A. BLOUNT AS EXECUTORS, AND AS TRUSTEES UNDER THE WILL OF HENRY M. FLAGLER, DECEASED, *Appellees.*

Opinion Filed July 7, 1922.

1.  A valid assessment of property for taxation is an essential foundation to enforce the payment of an *ad valorem* tax thereon by the instrumentalities provided by law for such purpose.

2.  A State, by appropriate legislation and action thereunder, may when no injustice is done reach backward and collect taxes upon taxable property which has escaped taxation for previous years through the mistake or error of the assessor or the failure of the owner to return it for taxation.

3.  Statutory authority must exist to sustain the assessment of property for taxation for preceding years in which such property has escaped taxation.

4.  The intent of a valid statute is the law and this is ascertained by a consideration of the language and purpose of the enactment.

5.  Where the legislative intent is clearly manifest by the language used, considered in its ordinary and grammatical sense, rules of construction are unnecessary and inapplicable.

6.  Where there is ambiguity and uncertainty in the meaning of the words employed in a statute, the legislative intent should be ascertained by a consideration of the entire Act and of others *in pari materia,* and appropriate effect should be given to all the material portions of the law, so as to effectuate as far as possible the intent of the lawmakers.

7.  In the construction of statutes relative to taxation, it is fairly and justly presumable that the legislature has so shaped the

law as, without ambiguity or doubt, to bring within it everything that was intended to be embraced.

8. The provisions of Sec. 37, Chap. 5596, Acts of 1907, considered and held not to authorize the assessment of personal property in 1919 for the years 1914 to 1917, inclusive, though such property may have improperly escaped taxation for such years.

9. No authority, statutory or otherwise existed in this State in 1919 which authorized the assessment of personal property in 1919 for any year prior to 1918, though such property may have improperly escaped taxation for such previous year or years.

An Appeal from the Circuit Court for St. Johns County, George Couper, Gibbs, Judge.

Order affirmed.

*George W. Bassett, Jr., David R. Dunham, George C. Bedell and Rivers Buford, Attorney General,* for Appellants;

*Scott M. Loftin and Robert H. Anderson,* for Appellees.

LOVE, CIRCUIT JUDGE.—Suit was brought by the State of Florida and the County of St Johns against William H. Beardsley, William R. Kenan, Jr., and W. A. Blount, as Executors, and as Trustees under the will of Henry M. Flagler, deceased, by bill in chancery, filed in the Circuit Court of St. Johns County, wherein the complainants sought to enforce an alleged tax lien upon personal property, arising, as it is stated in said bill, from an assessment for taxes of certain personal property of the estate of Henry M. Flagler, in the hands of his Executors, which asassessment was made by the Tax Assessor of said county

in 1919 for the years 1914, 1915, 1916, and 1917, and which property was omitted from the tax assessment rolls of said county for said years.

From the allegations of the bill, it appears that Henry M. Flagler for many years prior to, and at the time of his death, was a citizen of the State of Florida and a resident of St. Johns County; that his last will and testament was duly probated in the court of the County Judge of said county and letters testamentary duly issued therefrom; that an inventory and appraisal of the personal property of the deceased was duly made and filed in said court; that the personal property of the estate of the said Henry M. Flagler, held by his Executors, was in June, 1919, discovered by the Tax Assessor of St. Johns County to have been omitted from the tax assessment rolls of the county for the years 1914, 1915, 1916 and 1917, and thereupon he proceeded to assess such property for the years in which it had not been assessed as alleged. The completion of the tax assessment roll for 1919, its approval by the Board of County Commissioners and delivery to the Tax Collector for St. Johns County, are alleged to have been done in the manner required by statute and are set out in detail. Further, it is alleged that the Tax Collector has been unable to collect the taxes assessed in 1919 for the years 1914 to 1917, inclusive, which taxes are charged to be valid liens on the property so held by the Executors and are enforceable only in a court of chancery.

To this bill a general demurrer for want of equity was filed by the defendants and sustained by the Circuit Judge hearing the cause. From this order the complainants have appealed.

The first and principal question presented by the record in this case is, whether or not there was any legal authority

for the assessment for taxation of personal property for past years in which such property had escaped taxation, either through the mistake or error of the Tax Assessor or his failure to discover it, or through the failure of the owner to return it for taxation.

We may assume as settled law, that in order to enforce the payment of an *ad valorem* tax, through and by means of the instrumentalities provided by law, there must first be a valid assessment of the property upon which such tax is attempted to be imposed.    McKeown v. Collins, 38 Fla. 276, 21 South. Rep. 103; Nail v. Browning, 73 Fla. 316, 74 South, Rep. 315; Florida East Coast Fruit Land Co, v. Mitchell, 80 Fla. 291, 85 South, Rep 661.

That a State may, by appropriate legislation and action thereunder, reach backward and collect taxes upon taxable property which has escaped taxation for a given year or years through the mistake or error of the Assessor or the failure or neglect of the owner to return it, is well settled in this State and elsewhere.    Wade v. Murrhee, 75 Fla. 494, 78 South. Rep. 536.

This last cited case intimates, (without actually so deciding, the point not being presented for determination) and the great weight of authority holds that, in the absence of statute, back assessments for previous years on omitted property are not authorized.    Pierson v. Minnehaha County, 28 S. D. 534, 134 N. W. Rep. 212, and cases therein cited.    Additional cases holding this proposition are State v. Gage, (Tex. Civ. App.), 176 S. W. Rep. 928; Perry County v. Selma, M. & M. R. R. Co., 58 Ala. 546; Ashland County v. Knight, 129 Wis. 63, 108 N. W. Rep. 208.

We have been cited to only one case apparently holding

to the contrary, Pond v. Negus, 3 Mass. 230, which was decided with reference to a statute requiring a school district tax to be assessed in thirty days after the clerk of the district should certify to the assessors the sum to be raised. This case was subsequently distinguished and limited, as to this point, in Eames v. Johnson, 4 Allen (Mass.) 382, holding, that a highway tax can not be assessed after the term in which it is made the duty of the assessor to assess it; though the court, after adverting to Pond v. Negus, and stating that it was decided under a different statute, admitted that it was "obnoxious to the objection of allowing a tax to be assessed after the term in which it was made the duty of the assessors to assess the same and we are not disposed to extend it." As this point was not discussed in Pond v. Negus, but seems to have been assumed as a matter of course, and as this case is opposed to the great weight of authority on this point, if not to practically all the other cases determining such question, it is neither enlightening nor persuasive. Expressions in Libby v. Burnham, 15 Mass. *144, seemingly opposed to our holding, are merely obiter dicta.

From the premises, it follows, that to sustain the assessment of property for taxation for past years in which such property has escaped taxation, statutory authority must exist. On behalf of appellants it is contended that Section 37, Chapter 5596, Acts of 1907, confers such authority, and it is upon such authority that they principally rely to sustain the assessment under consideration. Unless it does, then this suit must fail.

Before attempting to ascertain the extent and meaning of this section, a consideration of some of the other provisions of the Act in question, may be of assistance in construing and interpreting its language, for, as it was said by

this court in State ex-rel. Triay v. Burr, 19 Fla. 290, 84 South. Rep. 61, ''the intent of a valid statute is the law and this is ascertained by a consideration of the language and purpose of the enactment.    Where the legislative intent is clearly manifest by the language used, considered in its ordinary and grammatical sense, rules of construction are unnecessary and inapplicable.    Where there is ambiguity and uncertainty in the meaning of the words employed in a statute, the legislative intent should be ascertained by. a consideration of the entire act and of others in *pari materia*: and in doing so, appropriate eecfft should, if possible, be given to all the material portions of the law so as to carry out and effectuate in the fullest degree the intent of the law makers.''

Section 22 of the Act provides, as far as it is material for our present consideration, that: ''If any County Assessor of Taxes when making his assessment shall discover that any land in his county has for any reason escaped taxation for any or all the three previous years or that any land was illegally sold for taxes and was then liable for taxation, he shall, in addition to the assessment of such lands for that year, assess the same separately for such year or years that they may have escaped taxation, or was so illegally sold, at the cash value thereof in such year, noting distinctly the year in which such land escaped taxation, and such assessment shall have the same force and effect as it would have had, if made in the year it escaped taxation, and such taxes shall be levied and collected thereon in like manner and together with the taxes of the year in which such assessment is made. but no land shall be assessed for more than three years arrears of taxation and all land shall be subject to such taxation to be assessed into whosoever's hand they may come.''

Section 23 of the same Act requires the County Assessor

of Taxes to complete the assessment rolls of the respective counties on or before the first Monday in July of each year.

Sction 34 provides that, Tax Collectors shall make all collections on or before the first Monday in April and to make a final report and settlement with the Comptroller and County Commissioners on or before the first Monday in July of each year.

Section 37, from which appellants contend, is derived the authority for making the assessments in question, is as follows: "If any Tax Collector has reason to believe or is informed that any person or agent of any firm, company or corporation has given to the County Assessor of Taxes or to the Assistant Assessor of Taxes an erroneous statement of his or their or its personal property, or that the County Assessor of Taxes has not returned the full amount of all property, either real or personal, to be listed in his county or any assessment district thereof, or has omitted or made an erroneous return of any property which is by law subject to taxation, he shall at once notify the County Assessor of Taxes of the facts in the case; and if such information as to personal property is given the County Assessor of Taxes before the first Mondey in April of any year, he shall proceed at once to make an additional assessment in triplicate, and after attaching the affidavit and warrant required in this Act to be annexed to the assessment roll, he shall dispose of such additional assessment roll in the same manner as is provided for in the disposition of the regular assessment roll, and all personal property about which the County Assessor of Taxes shall be notified after the first Monday in April, and all real estate about which he shall be notified between, either before or after the first day of April, or which shall be omitted from the assessment roll, shall be assessed on the regular assessment roll then in course of preparation."

Bearing in mind that this Section of the Act follows those providing for delivery of the assessment roll to the Tax Collector and specifying the time limit within which collections are required by the State to be made, a consideration of that part of Section 37, providing that, ''If any Collector has reason to believe or is informed that any person or agent of any firm, company or corporation has given to the County Assessor of Taxes or to the Assistant Assessor of Taxes an erroneous statement of his, their or its personal property, or that the County Assessor of Taxes has not returned the full amount of all property either real or personal, to be listed in his county or any assessment district thereof, or has omitted or made an erroneous return of any property which is by law subject to taxation, he shall at once notify the County Assessor of Taxes of the facts in the case,'' clearly indicates that the references to omissions and erroneous statement and returns of taxable property therein, relate to the assessment roll then in the hands of the Tax Collector for collection of taxes and to the year for which taxes have been assessed on such roll.

The next provision of Section 37 is :

''If such information as to personal property is given the County Assessor of Taxes'' (that is, by the Tax Collector as the context clearly indicates) ''before the first Monday in April of any year''—the last day on which the Tax Collector is required under the statute to make collection of taxes—''he'' (the Assessor), ''shall proceed at once to make an additional assessment in triplicate, and after attaching the affidavit and warrant required by this Act to be annexed to the assessment roll, he shall proceed to dispose of such additional assessment in the same manner as is provided for in the disposition of the regular assessment roll.''

Significantly, the additional roll provided for is limited to personal property, presumably for the reason that Section 22 of this Act provides for the assessment by the Tax Assessor of such land as may have escaped taxation for any or all three years previous to the one for which such Assessor may be making assessments at the time he may learn of such omission; and, under said last mentioned section, such land can be assessed on the regular roll then in course of preparation for such omitted years. No provision for back assessments of personal property is to be found in the statutes of this State other than in Section 37 of the Act under consideration. Under the plan of annual assessments, prevailing in this State, the assessment provided for in such "additional assessment roll" is for the year for which taxes are then being collected.

Continuing, said Section 37 concludes as follows:

"and all personal property about which the County Assessor of Texas shall be notified after the first Monday in April, and all real estate about which he shall be notified between, (sic) either before or after the first day of April, or which shall be omitted from the assessment roll, shall be assessed on the regular assessment roll then in course of preparation."

Appellants contend that this last quoted provision authorizes the assessment of personal property as well as of real property, for all the years in which such property has escaped taxation without any limitation whatever; but that Section 22 imposes a limitation of three years on back assessments of real property. But in view of the entire Act and of the principles of law hereinbefore stated, it seems clear to us that this part of the Section requires that any property, real or personal, that has been omitted from the assessment roll of previous years, which shall come to the

knowledge of the Tax Assessor, shall be assessed by him under and pursuant, and pursuant only. to express statutory authority.    All real estate, which may have theretofore escaped taxation, may, under the express provisions of Section 22 of this Act, be assessed for any and all of three previous years and the manner and means of so doing are specifically set forth in said Section.    This Section 22 of the Act is the one under which authority for the back assessment of real property is based, not Section 37, and this was so held in Wade v. Murrhee, 75 Fla. 494, 78 South. Rep. 536; where it was stated that, "the statute authorizing the assessment of property which has escaped taxation for any or all of the three previous years is Section 22 of Chapter 5596, Acts of 1907."    As this section is expressly confined to real property and as no other provision of like import, authorizing the back assessment of personal property is to be found in the statutes of this State, we are led to the conclusion that it was the intent of the legislature to refrain from granting authority to assess personal property for back taxes other than for the year preceding the one in which "information as to personal property is given the County Assessor of Taxes before the first Monday in April." This interpretation of the statute is supported by the rule for the construction of statutes relative to taxation stated in 1 Cooley on Taxation (3rd ed.) 464, as follows: "It is fairly and justly presumable that the legislature which was unrestrained in its authority over the subject has so shaped its law as, without ambiguity or doubt, to bring within it every thing that was meant should be embraced," and the same rule with a slight change in phrasing is adopted in 25 R. C. L. 1092.

To hold otherwise would require us to introduce into the Act words or provisions omitted from it by the legislature, and thus by remedying what may be viewed by some as a

defect in the statute, we should be making laws, not interpreting them. It is clear that the legislature, which is to determine all questions of policy or discretion in ordering and apportioning taxes and which must make all the rules and regulations by which the taxes must be collected, must be left to supply the authority to assess personal property for past years in which it may have escaped taxation, if such authority should be deemed salutary or desirable. As was said in Winona & St. P. Land Co. v. State of Minnesota, 159 U. S. 526, 16 Sup. Ct. Rep. 83, 40 L. Ed. 247, and quoted approvingly in Florida Cent. & P. R. R. Co. v. Reynolds, 183 U. S. 471, 22 Sup. Ct. Rep. 176. 46 L. Ed. 283, "it may well be that the legislature, in view of the probabilities of changes in the title or situs of personal property, might deem it unwise to attempt to charge it with back taxes, while at the same time, by reason of the stationary character of real estate, it might elect to proceed against that."

However this may be, we can not escape the conclusion, and so hold that there was no authority, statutory or otherwise, existing in this State, authorizing the assessment in 1919 of personal property for the years 1914 to 1917, inclusive, though such property may have improperly escaped taxation for such back years.

As this disposes of the basis of the case, it is unnecessary to consider the other points raised on this appeal, and the order sustaining the demurrer is affirmed.

BROWNE, C. J. AND TAYLOR, WHITFIELD AND ELLIS, J. J., concur.

WEST, J., disqualified.